*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MIRSAD KOLASINAC, | : | |
| Petitioner, | : | Civil Action No. 13-1397 (JLL) |
| v. | : | **OPINION** |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

**LINARES**, District Judge:

Presently before the Court is Petitioner Mirsad Kolasinac's motion to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255. (ECF No. 1). Petitioner filed his motion on or about March 6, 2013. (*Id.*). The Government ultimately filed a letter response on June 16, 2014, (ECF No. 18), to which Petitioner replied. (ECF No. 19). Following the appointment of counsel, Petitioner also filed a counseled brief in support of his petition on December 23, 2015. (ECF No. 24). For the following reasons, this Court will grant Petitioner's motion solely as to his claim that the drug quantity on which his sentence was based was improper, but will deny Petitioner's remaining claims without a hearing, and will deny Petitioner a certificate of appealability as to his non-drug quantity claims.

I. BACKGROUND

In its opinion upholding Petitioner's sentence on direct appeal, the Third Circuit provided the following summary of the basic facts underlying Petitioner's conviction:

The Federal Bureau of Investigation, Immigration and Customs Enforcement, and the Bureau of Alcohol, Tobacco, Firearms and Explosives conducted a joint investigation into Balkan criminal enterprises. The investigation used undercover officers to infiltrate criminal activities, particularly the trafficking of drugs, weapons, and other contraband.

[Petitioner] is a naturalized United States citizen originally from Serbia. At the time of his arrest, he worked as the superintendent of an apartment building and operated a coffee shop in New Jersey. [Petitioner] met two undercover agents during the investigation. At one meeting in June 2008, [Petitioner] gave one of the undercover agents a gun and offered to assist in any "violent act" the recipient needed to have done. In July of the same year, [Petitioner] and his cohort, Rasim Corhamzic, sold 5,100 pills of ecstasy to an undercover agent for $ 21,480. At the same meeting, [Petitioner] paid the undercover agent $ 2,500 for contraband cigarettes. In August 2008, [Petitioner] and Corhamzic again sold the undercover agent what they believed was ecstasy and Oxycontin or $ 65,620. Subsequent chemical analysis showed that some of the purported ecstasy pills in fact contained methamphetamine hydrochloride. Corhamzic had smuggled the drugs into the United States from Canada by noncommercial airplane.

[Petitioner] was indicted on five counts: (1) from January 2008 through March 14, 2009, conspiracy to distribute and to possess with intent to distribute controlled substances including methamphetamine and ecstasy; (2) from January 2008 through March 14, 2009, conspiracy to import controlled substances including methamphetamine and ecstasy from Canada to New Jersey; (3) possession with intent to distribute methamphetamine on July 14, 2008; (4) possession with intent to distribute methamphetamine from August 18-19, 2008; and (5) possession with intent to distribute ecstasy on July 14, 2008. [Petitioner] entered into a plea agreement and pled guilty to Count Four of the indictment.

[Petitioner]'s base offense level was determined to be 38. Three separate two-level enhancements were applied for possessing a firearm during the offense, unlawfully importing a controlled substance on a noncommercial aircraft, and importing methamphetamine. A three-level reduction was granted for acceptance of responsibility resulting in a total offense level of 41.

> [Petitioner] sought a variance based on his ignorance that the drugs were methamphetamine, his self-proclaimed minor role in the conspiracy, and the 18 U.S.C. § 3553(a) factors. The District Court denied his requests. It first noted that the non-mandatory guideline range was properly calculated. It then stated that [Petitioner]'s offense was very serious and required deterrence regardless of his ignorance about the product. The District Court also noted that the nature and quantity of drugs and the nature and extent of the conspiracy required a serious sentence. It further stated that [Petitioner] played more than a minor role in the transaction and conspiracy. While accepting that some of [Petitioner's] statements at sentencing mitigated towards a sentence at the bottom of the range, the District Court ultimately declared that the facts of the case did not warrant a variance below the mandatory minimum.
>
> The District Court subsequently sentenced [Petitioner] to 324 months imprisonment, on the low end of his guideline range. However, after the two-level increase for importation of methamphetamine was found inapplicable, resulting in a lower guideline range of 262-327 months, [Petitioner's] sentence was reduced to 262 months.

*United States v. Kolasiniac*, 497 F. App'x 216, 217-18 (3d Cir. 2012). Petitioner appealed, arguing that this Court erred by "not meaningfully considering his request for a downward variance." *Id.* at 218. The Third Circuit affirmed Petitioner's sentence on September 20, 2012, finding that no procedural error had occurred, and that this Court had properly considered and rejected Petitioner's requests for a downward departure. *Id.* at 218-19.

In March 2013, Petitioner filed his current motion to vacate. (ECF No. 1). During the pendency of that motion, Petitioner also filed a motion for a reduction of his sentence based on changes made to the Sentencing Guidelines pursuant to 18 U.S.C. § 3852(c)(2), colloquially known as a drug minus two motion. (ECF No. 26, Docket No. 09-307 at ECF no. 51). On February 4, 2016, this Court granted Petitioner's drug minus two motion and resentenced

3

Petitioner, reducing his sentence to 210 months imprisonment. (Docket No. 09-307 at ECF No. 53).

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

4

### B. Analysis

#### 1. An Evidentiary Hearing is not required in this matter

A district court need not hold an evidentary hearing on a motion to vacate where "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546. For the reasons set forth below, all of Petitioner's claims except his assertion that the drug quantity attributed to him at sentencing was overstated are without merit based on the record before this Court, and as such an evidentiary hearing is not required as to those claims. As to Petitioner's claim that the drug quantity calculation in the PSR was improper, this Court will grant the Petition as to that claim because the Government has conceded that the calculation contained in the PSR contains an error which overstated the quantity attributable to Petitioner, and no evidentiary hearing is necessary to resolve that claim. (*See* ECF No. 18 at 7-8).

#### 2. Petitioner's claim that he was sentenced using an improper drug quantity calculation

Petitioner's chief claim is that the drug quantity calculation contained in Petitioner's PSR was erroneous and that his resulting sentence was therefore harsher than that which would have resulted from the correct calculation. In its response to Petitioner's § 2255 motion, the

5

Government concedes that "[t]he PSR, the parties, and the Court treated [the drug quantities Petitioner sold to undercover agents] as Methamphetamine (Actual). However, a review of the lab reports has revealed that these were accurate quantities of methamphetamine, but not "actual" or "pure" methamphetamine. The result of this error is that rather than a conversion of one gram of methamphetamine (actual) into 20 kilograms of marijuana equivalent, the correct conversion would have been one gram of methamphetamine to 2 kilograms of marijuana equivalent" which should have resulted in a lower base offense level for Petitioner. (ECF No. 18 at 7-8). Because the Government has conceded that Petitioner was sentenced using an improper drug weight calculation, this Court will grant Petitioner's § 2255 motion only to the extent that Petitioner asserts that he must be resentenced using the appropriate calculation.

Because this Court will grant Petitioner's motion to the extent that he seeks resentencing using the appropriate drug weight calculation, an additional complication arises, however. As noted above, after the filing of this motion and after the Government had responded thereto, Petitioner filed a motion in his criminal case seeking a reduction in his sentence based on amendments to the sentencing guidelines applicable to certain controlled substance offenses. As a result of that motion, Petitioner was resentenced in February 2016 to a reduced sentence. (Docket No. 09-307 at ECF No. 53). As Petitioner has been resentenced, it is not clear at this time the extent to which the February 2016 resentencing has cured the defect in Petitioner's sentence caused by the overstated drug quantity. As such, this Court will order the parties to brief this matter so that this Court can determine whether a resentencing is still necessary and the appropriate guidelines range applicable to Petitioner in the event that this defect has not been cured by Petitioner's February 2016 resentencing.

6

### 3. Petitioner's Ineffective Assistance of Counsel Claims

In his motion, Petitioner presents several claims in which he asserts that his trial and appellate counsel were constitutionally ineffective. The standard governing such claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the

7

> proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge*, 119 F. Supp. 3d at 280-81. Here, Petitioner raises the following ineffective assistance claims: that counsel was ineffective in failing to challenge this Court's imposition of fines at sentencing and that appellate counsel was ineffective in failing to argue that this Court improperly applied a firearms enhancement on direct appeal.[1]

---

[1] In his pro se motion to vacate, Petitioner also presented a claim in which he asserted that counsel was defective in failing to file a motion to dismiss the indictment under the Speedy Trial Act. (ECF No. 1 at 15-16). Petitioner, however, chose to withdraw that claim in his reply brief, conceding the point based on the Government's arguments in its response. (ECF No. 19 at 2). As such, this Court will deem this claim withdrawn and will not address it further in this opinion.

8

### a. Petitioner's claim that counsel failed to challenge the fine levied against Petitioner at sentencing

Petitioner claims that counsel was constitutionally ineffective in failing to challenge the imposition of a $ 25,000 fine upon Petitioner at sentencing. "The plain and unambiguous language of § 2255 indicates that the statute only applies to '[a] prisoner in custody . . . claiming the right to be released." *United States v. Trimble*, 12 F. Supp. 3d 742, 745 (E.D. Pa. 2014). Restitution orders and fines, however, are not sufficient restraints on the liberty of a criminal offender to constitute 'custody.' *Id.*; *see also Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003); *United States v. Ross*, 801 F.3d 374, 380-81 (3d Cir. 2015). As a fine or restitution order does not qualify as "custody", and because § 2255 is available only to those seeking release from custody, relief under the statute is not available to those only seeking to challenge fines or restitution orders. *See Ridley v. Smith*, 179 F. App'x 109, 111 (3d Cir. 2006) (quoting *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999) (collecting cases)); *see also Kaminski v. United States*, 339 F.3d 84, 87-89 (2d Cir. 2003). A claim challenging a fine or restitution order likewise does not become cognizable simply because it is included within a petition which does present cognizable claims challenging an inmate's physical custody. *Trimble*, 12 F. Supp. 3d at 745-46; *Kaminski*, 339 F.3d at 89. As the Second Circuit explained in *Kaminski*:

> Habeas lies to allow attacks on wrongful custodies. There is therefore no reason why the presence of a plausible claim against a custodial punishment should make a noncustodial punishment more amenable to collateral review than it otherwise might be. . . . Collateral relief from noncustodial punishments is not made more readily available to a petitioner just because that petitioner happens at the time to be subject also to custodial penalties. And, the mere fact that the sentencing court chose to impose incarceration on a defendant in addition to restitution does not, as to the restitution

9

> order, distinguish that defendant from someone who, having been convicted, received a punishment that did not include any custodial element

339 F.3d at 89. That the claim challenging the fine or restitution order is presented as an ineffective assistance of counsel claims does not change this result. *Trimble*, 12 F. Supp. 3d at 746; *see also Shephard v. United States*, 735 F.3d 797, 798 (8th Cir. 2013); *Kaminski*, 339 F.3d at 85 n. 1; *United States v Thiele*, 314 F.3d 399, 402 (9th Cir. 2002); *Smullen v. United States*, 94 F.3d 20, 26 (1st Cir. 1996); *United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994); *but see Weinberger v. united States*, 268 F.3d 346, 351 n. 1 (6th Cir. 2001) (permitting a petitioner to challenge a restitution order under § 2255 based on a meritorious ineffective assistance of counsel claim). As Petitioner's claim that his counsel failed to argue his inability to pay a fine addresses only the fine imposed and does not challenge Petitioner's custody, that claim is not cognizable under § 2255, and as such must be denied, regardless of the fact that it is couched as an ineffective assistance of counsel claim and despite the presence of cognizable challenges to Petitioner's physical custody presented in his § 2255 motion. *Trimble*, 12 F. Supp. 3d at 746; *Kaminski*, 339 F.3d at 89.

### b. Petitioner's claim that counsel failed to challenge this Court's application of the firearm enhancement on appeal

In his final claim, Petitioner asserts that counsel was constitutionally ineffective on direct appeal in failing to challenge the application of the firearm enhancement to Petitioner's sentence under United States Sentencing Guidelines § 2D1.1(b)(1). As the Third Circuit has explained:

> When a defendant is convicted of a drug trafficking offense,

10

> U.S.S.G. § 2D1.1(b)(1) provides that "[i]f a dangerous weapon (including a firearm) was possessed,' the sentencing calculation should be 'increase[d] by 2 levels." The commentary to this Guideline explains that the enhancement 'reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1 cmt. n. 11. According to the commentary, "[t]he enhancement should be applied if the weapon was present, *unless it is clearly improbable* that the weapon was connected with the offense." *Id.* (emphasis added). To illustrate when it might be clearly improbable that a weapon is connected to the offense, the commentary explains that "the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet." *Id.* We have noted that the clearly improbable standard presents a significant hurdle that "defendants have rarely been able to overcome." *Drozdowski*, 313 F. 3d [819, 822 (3d Cir. 2002)].
>
> "[T]he question of whether it is clearly improbable that a gun was used in connection with a drug offense is a fact-bound determination. [*Id.* at 823]. We have identified four factors relevant to this inquiry:
>
>> (1) the type of gun involved, with clear improbability less likely with handguns than with hunting rifles, (2) whether the gun was loaded, (3) whether the gun was stored near the drugs or drug paraphernalia, and (4) . . . whether the gun was accessible.
>
> . . . .
>
> The government bears the burden of proving by a preponderance of the evidence that a sentencing enhancement applies. *See United States v. Grier*, 474 F.3d 556, 568 (3d Cir. 2007) (en banc). With respect to § 2D1.1(b)(1), the government must show only that the defendant "possessed" a dangerous weapon, and it can do so by establishing "that a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant." *United States v. Ruiz*, 621 F.3d 390, 396) (5th Cir. 2010) (quoting *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764-65 (5th Cir. 2008)). Once the government makes out a prima facie showing that the defendant . . . possessed a weapon, the burden of production shifts to the defendant to demonstrate that the connection between the weapon and the drug offense was "clearly

11

> improbable." *See United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012), *cert. denied*, --- U.S. ---, 133 S. Ct. 375 [(2012).] We emphasize that the ultimate burden of proving the applicability of the enhancement remains at all times with the government. But once the government has made a prima facie showing that the defendant possessed the weapon, the enhancement should be applied unless the defendant can demonstrate that the drug-weapon connection was clearly improbable.

*United States v. Napolitan*, 762 F. 3d 297, 307-09 (3d Cir. 2014).

In Petitioner's case, the Government argued that the § 2D1.1(b)(1) enhancement applied based on several discrete incidents which occurred during Petitioner's dealings with undercover officers. First, Petitioner gave a handgun to an undercover officer during a June 5, 2008, meeting in which Petitioner apparently offered to help the officer, whom Petitioner believed was a drug distributor, with any violent acts the officer needed committed. (*See* excerpt from Government's Sentencing Memo, ECF No. 18 at 8-9; Sentencing Transcript, Docket No. 09-307 at ECF No. 41 at 12-14). Next, Petitioner met with another undercover officer and a co-conspirator on February 5, 2009, and during that meeting showed the officer both his handgun and the hollow point bullets contained within while discussing future drug shipments. (*Id.*). Third, Petitioner possessed a handgun which was found under his pillow in his home when he was arrested. (*Id.*). Petitioner also apparently offered to sell an undercover officer an AK-47. (*Id.*).

Petitioner doesn't actually dispute that he possessed guns on these occasions in claiming that counsel was ineffective, but rather asserts that because he only pled guilty to a specific instance of possession with intent to distribute methamphetamine, he cannot be held accountable for the fact that he clearly possessed handguns during other meetings with the undercover officers related to that sale because Petitioner did not plead guilty to the conspiracy charges. Specifically,

12

Petitioner contends that he only pled guilty to possession with intent to distribute during August 18-19, 2008, and the incidents in which he had a gun occurred during other meetings related to his drug trafficking activities, and as such his possession of a gun at those times and when he was arrested was too attenuated from the possession charge to warrant the application of the firearm enhancement.

Petitioner previously raised this argument at sentencing. During sentencing, this Court rejected that argument, finding that several firearms were "involved through the commission of this offense at different stages, including [on] the day of his arrest." (Docket No. 09-307 at ECF No. 41 at 40). Then, as now, Petitioner's argument is too clever by half. Although Petitioner is correct that he pled guilty to a single instance of possession rather than to a conspiracy charge, his argument essentially attempts to sever his possession of methamphetamine with the intent to sell it to the undercover agents from all of the set-up meetings with the agents which resulted in that possession and sale of methamphetamine. Here, Petitioner provided two different handguns to the undercover agents on separate dates and possessed at least one more handgun where it could be easily accessed at the time of his arrest. Clearly, these weapons had a temporal relationship with the act involved here, the possession of the methamphetamine with the intent to sell it to the officers. The weapons also had a spacial relationship as well in so much as Petitioner possessed one of the handguns through the time of his arrest, and brought the others in order to give them to the undercover agents during the meetings which culminated in the sale of the methamphetamine. Petitioner splits the hair altogether too finely in attempting to sever his continued possession of the gun seized during his arrest and provision of two other guns during set-up meetings with undercover officers from his acquiring of and sale of methamphetamine to the officers. As the

13

various stash house cases make abundantly clear, that a weapon is not used in the commission of an offense is of no moment so long as a weapon was possessed in relation to the offense. *See, e.g., United States v. Torres*, 529 F. App'x 303, 305 (3d Cir. 2013); *see also United States v. McDonald*, 121 F.3d 7, 10 (1st Cir 1997) (so long as a weapon is in a location where it was available to be used to protect either the participants, drugs, or money involed in illegal activity related to the drug trafficking actions of a defenant, the enhancement is appropriate). The weapon possessed in Petitioner's home was readily available to him through the time of his arrest, and Petitioner clearly brought at least two other guns to meetings related to his drug trafficking and even provided those guns to the undercover agents to whom he was providing the drugs and offered to aid them in engaging in violent conduct. Clearly, the weapon possession enhancement was appropriate in this case.

Thus, turning to the question at hand, it is clear that counsel was not constitutionally ineffective in failing to raise this argument, which he made at sentencing, on direct appeal. While the *Strickland* standard does apply to the actions of appellate counsel, *see Smith v. Robbins*, 528 U.S. 259, 285 (2000), "it is a well established principle . . . that counsel decides which issues to pursue on appeal," *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996), and appellate counsel need not raise every nonfrivolous claim a defendant desires to make. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). As the keystone of effective appellate advocacy is the winnowing out of weaker claims in favor of those more likely to succeed, *id.* at 753; *Smith v. Murray*, 477 U.S. 527, 536 (1986), the Supreme Court has held that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *See Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.

14

1986)).

As this Court has now explained, Petitioner's assertion that the §2D1.1(b)(1) enhancement should not have applied to him is without merit. As such, that claim is not "clearly stronger" than the claims counsel chose to raise on direct appeal, and Petitioner has therefore failed to show that appellate counsel was deficient for failing to raise this claim on direct appeal. Petitioner's assertion that appellate counsel was constitutionally ineffective is thus without merit, and provides no basis for § 2255 relief.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c) the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As all of Petitioner's claims other than his claim regarding the drug quantity calculation used at sentencing are clearly without merit as discussed above, jurists of reason could not disagree with this Court's resolution of those claims, and it is clear that Petitioner's non-drug quantity claims are inadequate to deserve further encouragement. Petitioner will therefore be denied a certificate of appealability as to his non-drug quantity claims.

## IV. CONCLUSION

For the reasons stated above, Petitioner's motion will be GRANTED solely as to his claim that the drug quantity calculation used to determine his sentence was improper and this Court will order the parties to brief the issue of whether a resentencing is necessary under the circumstances, Petitioner's remaining § 2255 claims will be DENIED and Petitioner will be DENIED a certificate of appealability as to his non-drug weight claims. An appropriate order follows.

_____
Hon. Jose L. Linares,
United States District Judge

4/7/2016